UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-21592-SCOLA/Elfenbein

**YAIMARA C. ALBELO**,

    Plaintiff,

v.

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security**,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

    **THIS CAUSE** is before the Court on Plaintiff Yaimara Albelo's ("Plaintiff") Motion for Summary Judgment, ECF No. [13], and Defendant Kilolo Kijakazi's, Acting Commissioner of Social Security Administration, ("Defendant") Motion for Summary Judgment, ECF Nos. [15] and [17]. The Honorable Robert N. Scola, Jr., United States District Judge, referred this matter to me for a Report and Recommendation on dispositive matters. *See generally* ECF No. [12]. Having reviewed the Parties' respective Motions for Summary Judgement, the record, and the relevant law, I recommend that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and the Administrative Law Judge's Decision ("ALJ's Decision") be **AFFIRMED**.

**I.    BACKGROUND**

    On July 22, 2010, Plaintiff applied for disability insurance benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, alleging disability based on schizoaffective disorder and back pain that began on August 19, 2009. *See* ECF No. [9] at 153,

266, 269, 347.[1] Plaintiff's application was initially denied and denied again upon reconsideration. *See id.* at 90-91, 100-01. Thereafter, Plaintiff requested a hearing, which an Administrative Law Judge ("ALJ") held on April 26, 2012. *See id.* at 64-89, 153-55. Following the April 26, 2012 hearing, the ALJ, on July 3, 2012, issued an unfavorable decision. *See id.* at 102-20. Plaintiff appealed the ALJ's July 3, 2012 decision. *See id.* at 126-31. The Social Security Administration's ("SSA") Appeals Council granted review, ultimately remanding the case to the ALJ for further consideration on certain issues. *See id.* On remand, the ALJ held a hearing on January 28, 2014, and again found Plaintiff not disabled in a new decision dated February 24, 2014. *See id.* at 18-36. Plaintiff appealed the ALJ's decision, but the Appeals Council denied Plaintiff's request for review on August 18, 2015. *See id.* at 8-15.

Following the Appeals Council's August 18, 2015 denial, Plaintiff commenced an action in this District, with United States District Judge Kathleen M. Williams presiding, seeking review of Defendant's decision denying Plaintiff DIB under the Act. *See Albelo v. Colvin, et al.*, No. 15-CV-23554, Complaint, ECF No. [1] at 1, filed Sept. 22, 2015 (S.D. Fla. 2015). On March 8, 2017, Judge Williams entered an order adopting Magistrate Judge Andrea M. Simonton's Report and Recommendations to remand the case with instructions to the ALJ to (1) more fully consider the opinions of Plaintiff's treating physicians, (2) complete a new residual functional capacity assessment, and (3) complete a new credibility assessment viewing the record as a whole. *See Albelo v. Colvin, et al.*, No. 15-CV-23554, Order Adopting Report and Recommendation, ECF No. [28] at 2, filed Mar. 7, 2017 (S.D. Fla. 2015). Upon receipt of Judge William's order, the Appeals Council referred the case to a new ALJ for additional proceedings. *See* ECF No. [9] at 927-32.

---

[1] The citations to the page numbers within the administrative record refer to the page number using the CM-ECF pagination system, not the number stamp at the bottom of each document.

CASE NO. 23-CV-21592-SCOLA/Elfenbein

On February 22, 2018, ALJ Lornette Reynolds ("ALJ Reynolds") presided over a new hearing, *see id.* at 831-59, during which Plaintiff amended her alleged disability onset date to December 1, 2010, *see id.* at 776, 837. ALJ Reynolds issued a partially favorable decision on June 29, 2018, finding Plaintiff disabled from December 1, 2010, through June 30, 2013. *See id.* at 793. However, ALJ Reynolds found that Plaintiff's medical condition sufficiently improved and she was not disabled at any time between July 1, 2013 and June 29, 2018. *See id.* at 765-801. Plaintiff appealed ALJ Reynolds's decision on July 17, 2018, which the Appeals Council affirmed on April 7, 2023. *See id.* at 755-58.

Having exhausted her administrative remedies, on April 28, 2023, Plaintiff timely filed the instant action, seeking judicial review of the Appeals Council's April 7, 2023 decision. *See generally* ECF No. [1].

## II.   LEGAL STANDARDS

### A.   Judicial Review of Claims under the Act

A court's review of an ALJ's decision is limited to assessing whether there is substantial evidence in the record to support the ALJ's findings and whether the ALJ applied the correct legal standards in reaching his or her determination. *See Biestek v. Berryhill*, 587 U.S. 97, 104 (2019). Moreover, the Court will affirm an ALJ's decision so long as substantial evidence supports it. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) ("If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." (quotation marks omitted)).

The standard for substantial evidence requires more than a mere scintilla and necessitates relevant evidence that a reasonable person would accept as sufficient to uphold a conclusion. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (finding that substantial evidence is "more

than a scintilla, but less than a preponderance"). Courts "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). Even if the evidence leans against the ALJ's decision, the court must uphold it if substantial evidence supports it. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)).

### B. The SSA's Sequential Evaluation for Disability Claims

To be eligible for benefits, a claimant must meet the disability criteria outlined in the Act. *See* 42 U.S.C. § 423. A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

To determine a claimant's eligibility for DIB, the ALJ employs a five-step sequential evaluation. *See* 20 C.F.R. § 404.1520(a)(4). At the *first step*, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(i) ("At the first step, we consider your work activity, if any."). If so, a finding of "no disability" is made. *See* 20 C.F.R. § 404.1520(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.").

If the claimant is not engaged in substantial gainful activity, then the ALJ must proceed to the *second step* and determine whether the claimant suffers from a "severe impairment." *See* 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s)."). An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1520(c) (stating that an

impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities"). If no severe impairment is found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis. *See id.* ("If you do not have any impairment or combination of impairments . . . , we will find that you . . . are [] not disabled. . . . However, it is possible for you to have a period of disability for a time in the past even though you do not now have a severe impairment.").

The ***third step*** requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. *See* 20 C.F.R. § 404.1520(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled."). If so, the ALJ will find the claimant disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.").

If a claimant's impairment does not meet or equal those listed in Appendix 1 of the Regulations, the ALJ must proceed to ***step four***. *See* 20 C.F.R. § 404.1520(e) ("If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record[.]"). Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. *See id.* The regulations define RFC as "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). This determination accounts for "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others. 20 C.F.R. § 404.1545(a)(3). The ALJ

must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work. *See* 20 C.F.R. § 404.1520(f) ("If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment, which we made under paragraph (e) of this section, with the physical and mental demands of your past relevant work."). If so, the claimant is found not disabled. *See* 20 C.F.R. § 404.1520(f) ("If you can still [perform past relevant] work, we will find that you are not disabled.").

If the claimant establishes an inability to return to past relevant work, the inquiry turns to **step five**. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c). "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale*, 831 F.2d at 1011). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *Id.*

### III.  THE ALJ'S DECISION

As discussed in the background section of this report, on June 29, 2018, ALJ Reynolds entered a partially favorable decision, finding Plaintiff disabled from her "amended alleged onset date of disability of December 1, 2010 . . . through June 30, 2013[,]" but that "[s]tarting July 1, 2013, medical improvement occurred and [Plaintiff] [did] not become disabled again through the date of [her] decision." ECF No. [9] at 777. In reaching this conclusion, ALJ Reynolds employed the SSA's five-step sequential evaluation outlined above.

At **step one**, ALJ Reynolds concluded that Plaintiff had "not engaged in substantial gainful activity since [her] amended alleged onset date[.]" *Id.* at 779 (citations omitted). At **step two**,

ALJ Reynolds concluded that from the "amended alleged onset date of disability[,]" Plaintiff suffered from "the following severe impairments: [1] schizoaffective disorder; [2] degenerative joint disease of the cervical and lumbar spine; [3] early facet osteoarthritis; [4] hypertension; and [5] atypical chest pain[.]" *Id.* (citing 20 C.F.R. § 404.1520(c); other citation omitted).

At ***step three***, ALJ Reynolds concluded that Plaintiff's impairments met the criteria listed in Appendix 1 of the regulations from December 1, 2010 to June 30, 2013, but not from July 1, 2013 to June 29, 2018. *See id.* at 780, 784.

ALJ Reynolds found that Plaintiff's schizoaffective disorder diagnosis rendered her disabled from **December 1, 2010 to June 30, 2013**. *See id.* at 780-84; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(1) ("The listings for mental disorders are arranged in 11 categories[,]" among which is "schizophrenia spectrum and other psychotic disorders (12.03)[.]"); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2) ("Listings 12.02, 12.03, 12.04, 12.06, and 12.15 have three paragraphs, designated A, B, and C; your mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C."). First, ALJ Reynolds found that Plaintiff's psychiatric treatment notes — prepared by Plaintiff's psychiatrist, Dr. Orlando Santana ("Dr. Santana") — adequately documented the presence of (1) "[d]elusions or hallucinations[,]" (2) "[d]isorganized thinking (speech)[,]" and (3) "[g]rossly disorganized behavior or catatonia." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03(A); *see* ECF No. [9] at 781. Next, ALJ Reynolds found that Plaintiff experienced (1) moderate-marked deficits in "[u]nderstand[ing], remember[ing], or apply[ing] information[,]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03(B)(1); (2) moderate deficits in "[i]nteracting with others[,]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03(B)(2); (3) marked deficits in "[c]oncetrat[ing], persist[ing], or maintain[ing] pace[,]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03(B)(3); and (4) marked limitations in

7

"[a]dapting or manag[ing] oneself[,]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03(B)(4). *See* ECF No. [9] at 781-84. In making this finding, ALJ Reynolds afforded (1) significant weight to Dr. Santana's opinion due to his status as Plaintiff's longtime treating source; (2) moderate weight to the opinion of Dr. Nathan Strahl, an impartial medical expert who had the opportunity to review the entire evidentiary record and listen to Plaintiff's testimony; and (3) partial weight to the opinions of "the State Disability Reviewing doctors" because they "did not have the benefit of evidence submitted at the hearing level." *Id.* at 784.

In assessing Plaintiff's impairments for the period running from **July 1, 2013 to June 29, 2018**, ALJ Reynolds took a broader approach. Instead of focusing solely on whether Plaintiff's schizoaffective disorder rendered her disabled under the Act — and therefore eligible for DIB, ALJ Reynolds considered whether Plaintiff's other alleged impairments could qualify her for DIB. Specifically, the ALJ considered whether Plaintiff's alleged back pain and cardiovascular conditions may qualify. Given that Plaintiff's Motion for Summary Judgment only challenges the ALJ's findings as to her schizoaffective disorder and does not challenge any findings relating to any physical impairments, this Report focuses solely on the mental health issues discussed in the ALJ's decision.

During this time period, July 1, 2013 to June 29, 2018, ALJ Reynolds considered whether Plaintiff's schizoaffective disorder qualified her for DIB. To recap, to make a finding of disability under the SSA's 12.03, a claimant must satisfy Paragraphs A and B or Paragraphs A and C of the listing. *See generally* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03. To satisfy Paragraph B, Plaintiff's schizoaffective disorder needed to cause "[e]xtreme limitation of one, or marked limitation of two, of the [four] areas of mental functioning" listed in the Paragraph. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03(B). On the other hand, to satisfy Paragraph C, Plaintiff needed to

provide evidence documenting her schizoaffective disorder "over a period of at least 2 years" and evidence of both (1) "treatment . . . that is ongoing and that diminishes the symptoms and signs of" her schizoaffective disorder and (2) "minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03(C).

Weighing the evidence against these standards, ALJ Reynolds concluded that Plaintiff's alleged schizoaffective disorder did not qualify her for DIB under step three of the SSA's five-step sequential analysis for the period running from July 1, 2013 to June 29, 2018.  ALJ Reynolds's analysis assumed that Plaintiff's condition satisfied Paragraph A of the SSA's 12.03 and, thus, focused entirely on Paragraphs B and C of the Listing.  Taking Paragraph B first, ALJ Reynolds found that Plaintiff had only (1) a "moderate limitation" in "understanding, remembering, or applying information[,]" (2) a "mild limitation" in "interacting with others," (3) a "moderate limitation" in "concentrating, persisting or maintaining pace," and (4) a "moderate limitation" in "adapting or managing oneself[.]"  ECF No. [9] at 786; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03(B)(1)-(4).  And with respect to Paragraph C, ALJ Reynolds found that "the evidence fail[ed] to establish the presence of[] '[P]aragraph C' criteria."  ECF No. [9] at 787.

Because Plaintiff's impairment did not meet or equal any of the Listings in Appendix 1 of the regulations for the period running from July 1, 2013 to June 29, 2018, ALJ Reynolds proceeded to ***step four*** of the SSA's five-step sequential analysis and found that Plaintiff had the RFC to perform light exertional work, starting on July 1, 2013.  *See id.* at 787.  In determining Plaintiff's RFC, ALJ Reynolds considered all of Plaintiff's alleged impairments, including her mental and alleged physical impairments, against the opinions and medical records prepared by Plaintiff's

other treating physicians and the opinions of other physicians familiar with Plaintiff's case. *See id.* at 787-92.

After considering Plaintiff's degenerative disc disease and cardiovascular issues, ALJ Reynolds ended her analysis of step four with an evaluation of Plaintiff's schizoaffective disorder. *See id.* at 789-92. ALJ Reynolds noted that from July 1, 2013 onwards, Plaintiff displayed a marked improvement in her mental state as evidenced by the notes and records of her treating physicians. When Dr. Conchita Jackson ("Dr. Jackson") saw Plaintiff in August and November 2017, she noted that Plaintiff denied experiencing memory loss, anxiety, and depression and that the results of the neurological and psychiatric exams were normal. *See id.* at 789. Next, ALJ Reynolds extensively surveyed the findings of Dr. Santana; and in that survey — which entailed a review of medical records that spanned several years, ALJ Reynolds noted that Plaintiff's mental condition improved with pharmacological treatment and that any flare-ups in symptoms are attributable to situational stressors and were, therefore, temporary. *See id.* at 789-91. ALJ Reynolds also considered Dr. Mary Seay's ("Dr. Seay"), "the State agency medical consultant," opinion that Plaintiff could perform light exertional work but only accorded her opinion "some weight" because Dr. Seay did not "have the benefit of evidence submitted at the hearing level[.]" *Id.* at 788.

Based on the foregoing, ALJ Reynolds concluded — in consultation with a report prepared by vocational expert Lorin Lovely — that Plaintiff could return to her occupation as a housekeeper. *See id.* at 792. And because ALJ Reynolds found that Plaintiff could perform past relevant work as a housekeeper, she did not proceed to ***step five*** of the SSA's five-step sequential analysis.

## IV.   DISCUSSION

Plaintiff premises her Motion for Summary Judgment on the argument that ALJ Reynolds failed to give Dr. Santana's opinion controlling weight under "the 'treating physician's rule' articulated in 20 C.F.R. § 404.1527(c)" when concluding that Plaintiff's schizoaffective disorder did not render her eligible for DIB for the period running from July 1, 2013 to June 29, 2018. ECF No. [13] at 6. To support this position, Plaintiff points to Dr. Santana's medical assessments in November 2013 and December 2017 in which he opined that Plaintiff lacked the RFC to perform past relevant work. *See id.* at 9-10. Specifically, Plaintiff claims that ALJ Reynolds relied too heavily on the benign clinical findings Dr. Santana reported during eight visits that occurred over approximately 14 months and ignored Dr. Santana's non-benign clinical findings that he documented during other visits. *See id.* at 10. Additionally, Plaintiff asserts that ALJ Reynolds placed too much weight in the medical opinions of non-treating physicians.

Defendant bases her Motion for Summary Judgment on the argument that ALJ Reynolds properly afforded Dr. Santana's medical opinion little weight after July 1, 2013 because "based upon her review of the entire record . . . Dr. Santana's opinions were inconsistent with the medical evidence after that date[.]" ECF No. [15] at 8. Defendant also claims that the federal case law upon which Plaintiff relies to support her position is factually distinguishable and, thus, provides her no support. *See id.* at 12-13.

For the following reasons, I find that Plaintiff's Motion for Summary Judgment should be denied and Defendant's Motion for Summary Judgment should be granted.

Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If medically acceptable

clinical and laboratory diagnostic techniques support a treating physician's opinion on the nature and severity of a claimant's impairments, and such opinion is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Good cause to discount a treating doctor's opinion exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). If a treating physician's opinion does not warrant controlling weight, an ALJ must still weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; and (6) other factors which tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(d).

As explained above, Plaintiff contends that ALJ Reynolds did not give sufficient weight to Dr. Santana's medical opinion for the period running from July 1, 2013 to June 29, 2018 when assessing the severity of her schizoaffective disorder and the disorder's effect on her RFC. I disagree.

ALJ's Reynolds's decision to afford Dr. Santana's opinion little weight for the period running from July 1, 2013 to June 29, 2018 came after careful study of his medical notes, which he prepared over approximately eight years. *See* ECF No. [9] at 780-93. For the period running from December 1, 2010 to June 30, 2013, ALJ Reynolds gave Dr. Santana's opinion significant weight, recognizing the consistency between Plaintiff's reported symptoms, Dr. Santana's treatment in response to those symptoms, and Dr. Santana's opinion on Plaintiff's ability to

perform work in light of those symptoms. *See generally id.* For instance, when it came to the functional domain of "concentrating, persisting, or maintaining pace," ALJ Reynolds considered Dr. Santana's findings that (1) Plaintiff "reported daily environmental problems as added stressors" and "dysphori[a,]" *id.* at 782 (referencing Dr. Santana's clinical note from March 7, 2011); (2) Plaintiff experienced gradual improvement in her mental condition through June 2012, *see id.* (referencing Dr. Santana's various clinical notes taken during 2011 and 2012); (3) Plaintiff experienced marked deterioration in her medical condition, requiring him to increase Plaintiff's dose of Seroquel XR, *see id.* (referencing Dr. Santana's clinical note from August 2012); (4) Plaintiff responded well to the increased dose of the Seroquel XR, *see id.* (referencing Dr. Santana's various clinical notes from September 2012 to December 2012); (5) Plaintiff no longer required monthly visits, thus changing her visit frequency to once every one-and-one-half months, *see id.* at 783 (referencing Dr. Santana's clinical note from January 2013); and (6) Plaintiff's mental condition continued to improve and eventually stabilized, *see id.* at 782 (referencing Dr. Santana's various clinical notes from March 2013 to July 2013). In part based on this evidentiary record, ALJ Reynolds found that Plaintiff's mental impairment met the severity called for by the Listing 12.03. *See id.* at 784.

However, starting on July 1, 2013, ALJ Reynolds concluded that Plaintiff's schizoaffective disorder, after months of steady improvement, crossed a threshold and she could no longer be considered disabled based on that condition.[2] This conclusion is consistent with various findings in Dr. Santana's medical records for the period from July 1, 2013 to June 29, 2018, documenting Plaintiff's schizoaffective disorder. *See generally id.* at 784-93. For the period in question, Dr.

---

[2] Plaintiff claims in her Motion for Summary Judgment that ALJ Reynolds found that Plaintiff's mental condition "improve[d] literally overnight to the extent she is no longer disabled[.]" ECF No. [13] at 15. However, the record refutes this assertion.

Santana reported that Plaintiff (1) was frequently "cooperative[,]" (2) maintained "good eye contact[,]" (3) spoke without difficulty, (4) exhibited "no psychosis [or] mania[,]" (5) reported "improved sleep and no [] side-effects from medication[,]" and (6) "denied suicidal and homicidal ideation[.]" *See id.* at 786-87. As the ALJ noted, after June 30, 2013, Dr. Santana's medical treatment of Plaintiff consisted only of medication management, and she continued to report improvement from her medication without any side effects. *Id.* at 791. And, starting in December 2012, Dr. Santana changed Plaintiff's appointments from once a month to once every month and a half, and then again in January 2013, he changed the appointments to once every two months. *Id.* at 783. The foregoing is consistent with a patient whose condition is improving over time.

And various medical records corroborate Plaintiff's reports concerning her mental condition to Dr. Santana, such as (1) Plaintiff's report to Dr. Jackson that she was not experiencing "memory loss, anxiety, or depression" and (2) a depression screening conducted by Dr. Jose Escalante that showed Plaintiff was only experiencing mild symptoms. *Id.* at 786. The dissonance between Dr. Santana's findings concerning Plaintiff's condition versus his treatment of Plaintiff's condition, frequency of treatment, observations of Plaintiff during appointments as well as Plaintiff's own reports concerning her condition, provided ALJ Reynolds's good cause to discount Dr. Santana's medical opinion of Plaintiff's condition. *See Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (holding that an ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion).

Based on this finding, ALJ Reynolds then turned to gauge Plaintiff's RFC in light of her several impairments, among which was, of course, her schizoaffective disorder; however, in gauging Plaintiff's RFC, ALJ Reynolds continued to afford Dr. Sanatana's opinion little weight for the period running from July 1, 2013 to June 29, 2018 due the inconsistencies that existed

between his opinions and the evidentiary record. *See* ECF No. [9] at 787-93. For example — like in the period running from December 1, 2010 to June 30, 2013, Dr. Santana's notes for this period consistently showed Plaintiff's schizoaffective disorder steadily improving, finding that Plaintiff experienced (1) decreased symptoms of anxiety and depression, (2) better sleep, and (3) no mania, hypomania, loosening of association, suicidal or homicidal ideations, or flight of ideas. *See id.* at 789-90.

In addition to these observations, Dr. Santana made the remarkable clinical finding that Plaintiff's "psychosis remains on chemical remission." *Id.* at 1124. According to the National Institute on Mental Health, "[p]sychosis refers to a collection of symptoms that affect the mind, where there has been some loss of contact with reality." *Understanding Psychosis*, Nat'l Inst. of Mental Health, https://www.nimh.nih.gov/health/publications/understanding-psychosis (last visited Aug. 9, 2024). And according to the Cambridge Dictionary, "remission" is defined as "a period of time when an illness is less severe or is not affecting someone[.]" *Remission*, Cambridge Online Dictionary, https://dictionary.cambridge.org/us/dictionary/english/remission (last visited Aug. 9, 2024). Thus, when Dr. Santana found that Plaintiff's "psychosis remains on chemical remission[,]" he was essentially stating that the symptoms would not affect her so long as she adhered to her drug regimen.[3] *See* ECF No. [9] at 1124.

However, relying on *Simon v. Commissioner, Social Security Administration*, 7 F.4th 1094 (11th Cir. 2021), Plaintiff argues that ALJ Reynolds gave too much weight to Dr. Santana's benign clinical findings, which were made in "the relaxed, controlled setting of a medical clinic[.]" ECF

---

[3] It is worth noting that Plaintiff appears to have adhered to her drug regimen assiduously because the only point in the record where Dr. Santana reports a deviation from the prescribed drug schedule was when Plaintiff could not procure her medications due to payment issues. *See* ECF No. [9] at 782.

15

No. [13] at 13 (quoting *Simon*, 7 F.4th at 1107).[4] I agree with Defendant that this case is factually distinguishable from the instant case and provides Plaintiff's position no support.

*Simon* involved a sixty-two-year-old claimant with chronic depression, anxiety, and bipolar disorder who challenged the SSA's denial of his application for DIB. *See Simon*, 7 F.4th at 1097. There, the Eleventh Circuit held that the ALJ failed to state good cause to discount the opinion of the claimant's treating psychiatrist. *See Simon*, 7 F.4th at 1105. The Circuit Court explained that the claimant's psychiatrist reported over four years that the claimant continued to display "severe symptoms of mental illness, such as frequent panic attacks, uncontrollable racing thoughts, volatile mood swings, paranoia about leaving his home, and self-isolation from friends and family" and that when the ALJ decided to give little weight to the opinion of claimants treating physician "on the grounds that they were inconsistent with: (1) [claimant's] [medical history as reported by his physician],[] (2) certain observations made by the SSA consultants who examined [the claimant], and (3) [the claimant's] testimony that he was able to carry out certain daily tasks such as grooming himself and grocery shopping[,]" the ALJ erred by not "explain[ing] how any of th[o]se pieces of evidence were inconsistent with" the opinions of claimant's treating physician. *Id.* (quotation marks omitted).

---

[4] Plaintiff also relies on *Castro v. Acting Commissioner of Social Security*, 783 F. App'x 948 (11th Cir. 2019). *See* ECF No. [13] at 12-13. *Castro*, a non-binding case, is distinguishable in that the ALJ based the decision to afford the treating physician's opinions little weight based on alleged inconsistencies in the record that were not actual inconsistencies. 783 F. App'x at 955-56. Indeed, a review of the underlying medical records revealed that with regard to each alleged inconsistency, "a reasonable person would conclude that the record evidence was inadequate to establish a contradiction." *Id.* at 956. Unlike in *Castro*, in this case, there was substantial evidence for the ALJ to reasonably conclude that Plaintiff's medical records, including Dr. Santana's own medical records, were inconsistent with Dr. Santana's medical opinion that she was unable to function in any functional area.

Unlike the ALJ in *Simon*, ALJ Reynolds extensively considered Dr. Sanatana's medical findings. ALJ Reynolds stated in no uncertain terms that she was discounting Dr. Sanatana's opinion because — over several years — Dr. Santana found Plaintiff's condition to be stable or improving and that, despite those reports, he made the irreconcilable finding that Plaintiff had poor to no ability to function in a work environment for the period running from July 1, 2013 to June 29, 2018. *See* ECF No. [9] at 784, 787. Additionally, ALJ Reynolds — unlike the ALJ in *Simon* — did not rely on "snapshots" of wellness "to discredit the remainder of" Dr. Santana's findings, but rather upon reports — spanning several years — that Plaintiff's condition had improved and stabilized. *Simon*, 7 F.4th at 1106; *compare* ECF No. [9] at (finding that Plaintiff's "psychosis remain[ed] on chemical remission") *with Simon*, 7 F.4th at 1106 (11th Cir. 2021) ("It was also error to conclude that [claimant's physician's] occasional references to [claimant] being 'stable on medication' were inconsistent with a finding of debilitating mental illness.").

In sum, ALJ Reynolds's finding that Dr. Santana's opinions were inconsistent with his own medical records provided her adequate grounds to discount his opinion. *See D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 947 (11th Cir. 2010) ("Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error." (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212-13 (11th Cir. 2005)). Therefore, it was within ALJ Reynolds's discretion to consider the opinion evidence of the consulting, non-treating physicians to the extent it was consistent with the record under review. *See Proenza v. Saul*, No. 19-CV-24147, 2020 WL 6162850, at *3 (S.D. Fla. Aug. 4, 2020) ("Generally, an examining or treating physician's opinions are given more weight than non-examining or non-treating physicians' opinions unless 'good cause' is shown to the contrary. (citing 20 C.F.R. § 404.1527(d)(1)-(2))), *report and*

*recommendation adopted*, No. 19-CV-24147, 2020 WL 6158840 (S.D. Fla. Oct. 21, 2020), *aff'd sub nom. Proenza v. Comm'r of Soc. Sec.*, No. 20-14237, 2021 WL 3073777 (11th Cir. July 21, 2021). Accordingly, substantial evidence supported ALJ Reynolds's decision to find Plaintiff not disabled for the period running from July 1, 2013 to June 29, 2018 and her conclusion that Plaintiff was capable of performing past relevant work as a housekeeper and, therefore, must be affirmed. *See Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984); *Rogers v. Colvin*, Case No. 13-CV-2466, 2014 WL 6772135, at *5 (M.D. Fla. Dec. 1, 2014) ("If a plaintiff can perform any of her past relevant work . . . , she will be found not disabled.").

## V.     RECOMMENDATION

For the reasons set forth above, I respectfully **RECOMMEND** that Plaintiff's Motion for Summary Judgment be **DENIED**, **ECF No. [13]**, that Defendant's Motion for Summary Judgment be **GRANTED**, **ECF Nos. [15] and [17]**, and that the ALJ's Decision be **AFFIRMED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Robert N. Scola, Jr., United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

CASE NO. 23-CV-21592-SCOLA/Elfenbein

**RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida, on August 12, 2024.

                                          **MARTY FULGUEIRA ELFENBEIN**
                                          **UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record